UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| MARK TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00188-JPH-MJD |
| | ) | |
| BARBARA RIGGS, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Mark Taylor, an inmate at the Indiana Department of Correction, filed this civil rights action alleging that the defendants, three prison nurses, were deliberately indifferent to his wrist injury. The defendants have moved for summary judgment. The motion is fully briefed, and the Court has considered the parties' complete filings, including Mr. Taylor's surreply.

**I.      Summary Judgment Standard**

A motion for summary judgment asks the Court to find that the movant is entitled to judgment as a matter of law because there is no genuine dispute as to any material fact. *See* Fed. R. Civ. P. 56(a). A party must support any asserted disputed or undisputed fact by citing to specific portions of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party may also support a fact by showing that the materials cited by an adverse party do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly

support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the only disputed facts that matter are material ones—those that might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Indiana University*, 870 F.3d 562, 573–74 (7th Cir. 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3).

## II.   Facts

The following facts are undisputed, except where noted.

Mr. Taylor was an inmate at the Wabash Valley Correctional Facility when he injured his left wrist playing soccer on September 12, 2018. Mr. Taylor promptly saw a nurse, who assessed the wrist as "jammed" and recommended icing it.

Plaintiff submitted a healthcare request form on October 1, 2018, which resulted in a visit with nurse Barbara Riggs two-to-four days later.[1] Nurse Riggs noted that the wrist remained swollen, and she contacted Dr. Samuel Byrd, who ordered an x-ray. Mr. Taylor's medical records

---

[1] Mr. Taylor says four days. The defendants say two.

include notes from an examination by Dr. Byrd on October 5, 2018, dkt. 40-24, but Mr. Taylor

denies that any such examination took place, dkt. 50-1 at 3, ¶ 3 (Taylor affidavit).

Mr. Taylor's wrist was x-rayed on October 5, 2018. Dkt. 50-1 at 3, ¶ 3. According to

Mr. Taylor, Nurse Riggs saw the x-ray and told him he had a fracture. *Id.* at 5, ¶ 16. Dr. Byrd

reviewed the x-rays and ordered a splint. *See* dkt. 50-1 at 3, ¶ 4. He made his recommendation

after an email exchange with his supervisor, Dr. Mitcheff. *Id.* at 21-22 (emails). But an outside

radiologist reviewed the x-rays and found "no acute bony abnormality." Dkt. 40-25. The

radiologist identified only a "nonunited ulnar styloid fracture from [a] remote event." *Id.*

Mr. Taylor was treated by Nurse Riggs on October 9, 2018. Mr. Taylor requested a bottom

bunk pass. Dkt. 50-1 at 3, ¶ 5. Nurse Riggs informed Mr. Taylor that his x-ray did not show a

fracture, and she removed Mr. Taylor's splint. Dkt. 40-6 at 1. Nurse Riggs also provided a home

exercise plan. Dkt 40-1 at 3, ¶ 8. According to Mr. Taylor, he did not do the exercises because they

were too painful. Dkt. 50-1 at 3, ¶ 6.

Mr. Taylor submitted an informal grievance on October 17, 2018. Dkt. 50-1 at 30

(grievance). Defendant Amy Wright, Wabash Valley's director of nursing, responded to the

grievance two days later. *Id.* Nurse Wright explained that Mr. Taylor's x-rays showed an old

fracture. *Id.* She also noted that Mr. Taylor had been seen by a provider, and the provider did not

recommend a splint or a bottom bunk pass. *Id.*

Nurse Riggs treated Mr. Taylor on October 23, 2018. Dkt. 50-1 at 34. She noted swelling

above and below the ACE bandage that Mr. Taylor had wrapped around his wrist. Dkt. 40-1

at 3, ¶ 9. Nurse Riggs advised him that he was wrapping too tightly and that he should not be

wrapping his wrist at all more than a month after the injury. *Id.* Mr. Taylor rejected this advice. *Id.*

Nurse Riggs referred Mr. Taylor to a provider. *Id.*

Nurse Practitioner Dawson treated Mr. Taylor on November 1, 2018, based on Nurse Riggs's referral. Dkt. 40-8. NP Dawson again told Mr. Taylor that his x-rays showed no acute fracture but instead showed an "old" ulnar styloid fracture. *Id.* at 1. She noted that Mr. Taylor's left hand was not swollen and that he had been pushing laundry carts with no difficulty as part of his prison employment. *Id.* NP Dawson recommend Tylenol for Mr. Taylor's wrist pain. *Id.*

Mr. Taylor submitted another healthcare request form on November 4, 2018, dkt. 50-1 at 38, and was treated by Nurse Riggs two days later. Nurse Riggs informed him that he is not allowed to choose his preferred provider. Dkt. 40-10 at 2. She also advised him to follow NP Dawson's advice and use Tylenol for his wrist pain. *Id.* Mr. Taylor protested that the Tylenol was prescribed for an unrelated shoulder injury. *Id.* Nurse Riggs assured him it would work for both. *Id.*

Mr. Taylor submitted another informal grievance on November 7, 2018. Dkt. 40-18. Nurse Wright responded, noting that Mr. Taylor had been treated by Dr. Byrd and NP Dawson, and that his concerns had been addressed by those providers. *Id.* After receiving this response, Mr. Taylor submitted a formal grievance. Dkt 40-20. Defendant Kim Hobson—a nurse and the health services administrator at Wabash Valley—concluded that Nurse Wright's grievance response was appropriate based on the medical records and that, per Dr. Byrd, the fracture on Mr. Taylor's x-ray was "old." *Id.*

Mr. Taylor submitted additional healthcare request forms on November 11, November 18, and November 23, 2018. Dkt. 40-21; dkt. 40-22; dkt. 50-1 at 45. He was treated by Nurse Knepp on November 25, 2018. Dkt. 40-12. Nurse Knepp contacted a physician, who advised Mr. Taylor to take Tylenol as needed for pain in his left wrist. *Id.* at 3.

Mr. Taylor submitted another healthcare request form on November 29, 2018. Dkt. 50-1 at 49. Nurse Riggs saw him the next day, and Nurse Hobson was present. Dkt. 40-14 at 2. Mr. Taylor asserts that Nurse Wright and an internal investigation officer were present too. Dkt. 50-1 at 4−5, ¶ 16. Nurse Riggs observed Mr. Taylor's wrist and noted redness where it had been tightly wrapped. *Id.* Based on Mr. Taylor's continued choice to wrap his wrist too tightly, Nurse Riggs directed Mr. Taylor to turn over all ACE wraps in his possession. *Id.* Mr. Taylor initially refused, but he returned them later that day based on concerns that Nurse Riggs would order prison staff to remove the wraps from his cell. Dkt. 40-26 at 58−59 (Taylor deposition). Another nurse later gave Mr. Taylor an ACE wrap, and Mr. Taylor continued to use it. *Id.* at 60. Mr. Taylor asserts that Nurse Wright directed him to stop filing healthcare request forms for his wrist. Dkt. 50-1 at 5, ¶ 16. Mr. Taylor nevertheless filed another healthcare request form roughly three weeks later, on December 21, 2018. *Id.* at 17.

Mr. Taylor was treated by Dr. Rajoli on January 8, 2019. Dkt. 40-15. Dr. Rajoli observed no swelling or redness and advised Mr. Taylor to use Tylenol for pain relief. *Id.* at 1−2.

On January 14, 2020, Mr. Taylor complained to Dr. Byrd about pain in his left wrist. Dkt 50-1 at 6, ¶ 21. Two days later, Mr. Taylor was provided a splint. *Id.*, ¶ 22.

### III.    Discussion

Mr. Taylor alleges that Nurse Riggs, Nurse Wright, and Nurse Hobson were deliberately indifferent to his wrist pain. To prevail on an Eighth Amendment claim based on deliberate indifference to serious medical needs, a plaintiff must show that (1) he suffered from an objectively serious medical condition and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Knight v. Grossman*, 942 F.3d 336, 340 (7th Cir. 2019).

5

Although the defendants argue to the contrary, the Court assumes for purposes of this Order that Mr. Taylor's wrist injury and the resulting pain constitute an objectively serious medical condition. Nevertheless, the defendants are entitled to summary judgment because Mr. Taylor has not designated evidence showing that the defendants were deliberately indifferent to his condition.

For a showing of deliberate indifference, negligence—even gross negligence—is not enough. *Knight*, 942 F.3d at 340. "A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). A nurse may not avoid Eighth Amendment liability by relying on "blind or unthinking" deference to a practitioner. *See Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010). But absent some obvious risk, it is not a nurse's responsibility to second-guess a provider's recommended course of treatment. *McCann v. Ogle Cnty., Ill*, 909 F.3d 881, 887 (7th Cir. 2018). Likewise, prison administrators may rely on a treatment provider's prescribed course of treatment. *See Rasho v. Elyea*, 856 F.3d 469, 478–79 (7th Cir. 2017).

### A.    Nurse Wright and Nurse Hobson

The evidence shows that Nurse Wright and Nurse Hobson did not directly treat Mr. Taylor. They did, however, each deny at least one of Mr. Taylor's grievances. And, according to Mr. Taylor, they were both present when Nurse Riggs ordered him to turn in his ACE wraps.

Neither Nurse Wright's nor Nurse Hobson's grievance response showed deliberate indifference to Mr. Taylor's condition.

In the grievance reviewed by Nurse Hobson, Mr. Taylor alleged that he fractured his left wrist in September 2018. Dkt. 40-20. Nurse Hobson reviewed Mr. Taylor's medical records, including the radiologist's assessment that his x-rays showed "no acute bony abnormality" and

only a "nonunited ulnar styloid fracture from [a] remote event." Dkt. 40-25. The records also showed that Mr. Taylor was evaluated by Dr. Byrd, who reported an "old" fracture and concluded that Mr. Taylor did not need a splint. Dkt. 40-24 at 3. Nurse Hobson reported as much in her grievance response. Dkt. 40-20. Nurse Hobson was not deliberately indifferent for accepting Dr. Byrd's and the outside radiologist's assessment of Mr. Taylor's fracture.

Similarly, in the informal grievances reviewed by Nurse Wright, Mr. Taylor alleged that his fracture occurred in September 2018 and that he was never seen by Dr. Byrd. Nurse Wright responded that Mr. Taylor was seen by Dr. Byrd in early October 2018 and NP Dawson on November 1, 2018. Dkt. 40-18. She also informed Mr. Taylor that Dr. Byrd did not recommend a splint or bottom bunk pass. Dkt. 40-17. Nurse Wright was not deliberately indifferent for accepting Dr. Byrd's and the outside radiologist's assessment of Mr. Taylor's fracture.

Mr. Taylor disputes Dr. Byrd's assessment of his fracture, arguing that the radiologist's assessment of a "remote" fracture does not imply that the fracture is "old." Dkt. 50 at 28−29. He also argues that he should have been provided a splint regardless of how old the fracture was. *Id.* at 29−30. But these decisions were Dr. Byrd's, not Nurse Wright's or Nurse Hobson's. Nurse Wright and Nurse were not deliberately indifferent for failing to second-guess Dr. Byrd's treatment decisions.

### B.    Nurse Riggs

Nurse Riggs was regularly involved in Mr. Taylor's treatment. On October 3, 2018, she provided him with a splint and notified Dr. Byrd of the potential need for x-rays. Dkt. 40-5 at 2−3. On October 9, she removed the splint after Dr. Byrd determined that Mr. Taylor had an "old ulnar styloid fracture" and that "[n]o splinting [was] needed at this time." Dkt. 40-24 at 3; dkt. 40-6 at 1.

She also provided a home exercise plan, which Mr. Taylor declined to use. Dkt 40-1 at 3, ¶ 8; dkt. 50-1 at 3, ¶ 6.

On October 23, Nurse Riggs treated Mr. Taylor and referred him to a treatment provider. Dkt. 40-1 at 3, ¶ 9. She also told him that he was wrapping his wrist too tightly, causing it to swell. *Id.* Mr. Taylor rejected the advice. *Id.*

On November 6, after Mr. Taylor had been treated by NP Dawson, Nurse Riggs saw him again. Dkt. 40-10 at 2. She advised Mr. Taylor to follow NP Dawson's recommended treatment of Tylenol for wrist pain, despite Mr. Taylor's protests that the Tylenol was for his shoulder. *Id.* And when Mr. Taylor complained about not seeing Dr. Byrd, she responded that he was not entitled to choose his treatment provider. *Id.*

Mr. Taylor saw Nurse Riggs, Nurse Hobson, and—according to Mr. Taylor, at least—Nurse Wright on November 29. Nurse Riggs observed Mr. Taylor wearing an ACE wrap on his wrist, contrary to her recommendation, and directed him to turn over all his ACE wraps. Dkt. 50-1 at 4−5, ¶ 16. Mr. Taylor complied, but another nurse later gave Mr. Taylor an ACE wrap, and Mr. Taylor continued to use it. Dkt. 40-26 at 58−60.

No reasonable jury could find that Nurse Riggs was deliberately indifferent. Upon seeing Mr. Taylor's injury, she took prompt action and notified Dr. Byrd, who ordered x-rays. When Dr. Byrd concluded that the x-rays did not reveal a recent fracture, Nurse Riggs followed Dr. Byrd's treatment plan and removed the splint. She similarly followed NP Dawson's recommended treatment. Nurse Riggs was not deliberately indifferent for following Dr. Byrd's and NP Dawson's recommended course of treatment.

Nor was Nurse Riggs deliberately indifferent for confiscating Mr. Taylor's ACE bandages. She made a reasoned judgment that Mr. Taylor was doing more harm than good by wrapping his

wrist too tightly. Dkt. 40-1 at 3, ¶¶ 9, 13. Mr. Taylor provides no evidence that Nurse Riggs's assessment was wrong, let alone deliberately indifferent. Moreover, Mr. Taylor asserts that he obtained another ACE wrap and continued using it. Dkt. 40-26 at 60. He presents no evidence of injury from Nurse Riggs's order.

## IV.   Conclusion

Mr. Taylor's motion to file a surreply, dkt. [54], is **GRANTED**. The defendants' motion to strike the surreply, dkt. [58], is **DENIED**. The defendants' motion for summary judgment, dkt. [38], is **GRANTED**. Final judgment shall now enter.

**SO ORDERED.**

Date: 3/22/2021

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

MARK TAYLOR
988895
WABASH VALLEY – CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com